This morning we will hear 2022 3077 to carbon six barrels versus proof research Mr. Keegan you may proceed Morning your honors I'd like to first address the Delegation cannot support a lump claim by carbon six because it wasn't a named defendant in that litigation as Is fully explained in the briefing McGowan was sued in that litigation as McGowan doing business as a carbon six because proof erroneously believed Carbon six was a DBA of McGowan rather than a Separate entity, so they sued the wrong party by mistake The entire lawsuit is directed at carbon six McGowan doesn't make or sell carbon wrapped barrels all of the allegations were against the Conduct of carbon six in its manufacture of carbon wrapped barrels So the the lawsuit make no mistake was against the interest of and was directed at carbon six sought to suppress and eliminate the sales of carbon six and The cease and desist letter that was sent prior to the lawsuit was sent to carbon six's offices in Louisiana not to McGowan's offices in Montana where that company is located Furthermore that those facts came out during the underlying litigation and proof Indicated that it now understood It named the wrong party that carbon six was a different entity and that after the trademark Cancellation proceeding when the case came back to Montana federal court it would amend the complaint to name carbon six the the proper party, so The courts holding district courts holding elevates form over substance in saying that carbon six is not the right party to sue For the damages that the underlying litigation caused to carbon six Next the court held as a per se rule that filing a meritless lawsuit Can never be the basis of a lot proclaim that simply isn't true under the The weight of cases and in fact, there's no case that holds that as a per se rule the court relied on a case that said It involved suing an attorney for his actions in litigation and the court said that You can't you can't bring a lot proclaim against an attorney because of his conduct as an attorney Representing the opposing party in litigation said the court said that's what the the ethical rules are for So that the the GR restaurants case Exclusively relied upon by the district court simply isn't applicable Because it pertains to an attorney these issues are discussed beginning at page 11 of our brief and we cite multiple cases involving an actual Party who got sued Countersuing or bringing a later suit under lot because the original suit against it was meritless Are based on you know, knowingly fraudulent? Grounds which is the case we have here. So clearly the weight of authority Says that the underlying litigation here Which was to enforce a trademark that it turned out Proof knew was invalid from the time it applied for it for the reasons given in the cancellation proceeding when that Tribunal ultimately did invalidate that trademark Next the district court Turning to the prescription issues now Under the analysis we lay out in the brief which is supported by the authorities that we cite May 20th of 2021 when the Trademark tribunal Cancelled ruled and canceled the trademark as being invalid is the earliest date on which prescription could have begin to run under either of our two causes of action the defamation claim or the unfair trade practice claim The reason for that to discuss the defamation claim first is this settled rule in Louisiana that If you're bringing a defamation claim on the basis of allegations made in a lawsuit You have to allow the lawsuit to finish To give that court an opportunity to determine whether the allegations had merit or not Before you can bring your defamation claim In fact, there's cases that dismissed defamation claims as premature Because they were brought either as a counterclaim in the same suit or as a separate suit when the defamatory suit Was not completed yet So We couldn't have brought this lawsuit for defamation before at the earliest May 20th of 21 when the trademark was invalidated and really frankly It took a couple more months before the case to get back down into the Montana District Court before it got actually dismissed there. So we're into the fall of 2021 before the rule is triggered in Louisiana that Our defamation claim becomes ripe and can be brought and it was of course brought within just a few months after that well within the the one-year prescriptive period on the unfair trade practice claim The same date May 20th 2021 is the earliest and that that prescription could have began to run and that's because of the continuing tort doctrine and we cite multiple cases where That doctrine is applied in Similar type of cases. What do you do with hog and crump from the Louisiana Supreme Court? In those cases and as the court is well aware It's it's not just that the damages continue to suffer but the offending conduct Causing the damages has to continue in order for the continuing tort doctrine to apply in those two cases Which involved the leaking tanks underground the tanks were replaced with new tanks that didn't leak so the Tortious conduct if you will the the continuous leaking was ended now there had been Gas or whatever was in those tanks still in the ground and it was continuing to cause issues for neighbors But the conduct had ended and we got through a series of cases. And in fact, we talked about Courts that distinguished those cases on that ground where the conduct and the damages continued For a period of time to within one year or whatever the prescriptive period was of the current suit under consideration in this case the underlying conduct is the Attempt to enforce a fraudulently obtained trademark that proof knew was invalid and that conduct Involved a series of actions that that continued up until The May 20th ruling but after which a few months after which they voluntarily dismissed their Montana Litigation but the So there's two lines of cases we rely on there There's the one that simply says if your conduct is continuing and you keep taking steps and furtherance of it such as continuing the underlying litigation Continuing because remember it's not only lost sales that we're trying to recover in this case with because of our sales being suppressed by this This trademark dispute for several years. It's also the attorneys fees we incurred because in a trademark proceeding Before that board, even if you win, they don't allow you to recover for attorneys fees They don't allow you to make counterclaims for defamation or unfair trade practice or anything else It's strictly limited to the validity of the trademark. So Timeliness aside though is your theory that under LEPTA? Every time a company tries to enforce a trademark That is later invalidated. The company is violated Louisiana law. I would say you don't have to go that far at all in this case We've got to prove that they knew it was invalid at the time that they Applied for it and they therefore they are committing fraud on the Patent and Trademark Office, which is not only a civil violation It's also a crime. So if there's a good-faith attempt, it's okay but if they are not in good faith because they're aware that it's Not valid in there that it is that It is a violation of LEPTA every time If well, I'm only asking To reverse the district courts ruling that in I don't think this court has to go that far I think this court would only have to rule that if someone knowingly files a claim on a knowingly invalid trademark That that that rises to the level that could be a LEPTA claim You know, I mean is it repeated LEPTA claims every time you're trying to enforce it in any context Well, yes sure You know, so I would refer the court to the cases in our brief on cases involving a series of acts that constitute breaches as opposed to just one initial event that might cause damage over a long period of time, but That's not this case this is the case where These claims were filed knowing they were without merit and Actions were taken repeatedly in the market in the litigation in more than one tribunal to continue to inflict damage on the On carbon-6 So, I guess the short answer to your honor's question is no I wouldn't say that filing a lawsuit when you had a good-faith belief that it was meritorious and just losing in the end Somebody's gonna lose every time that can't be a LEPTA claim every time somebody loses a lawsuit So I hope that answers the court's question. Thank you The Last item I would address But I did want to refer the court to because I didn't really complete the discussion but The Lemke case we rely on on the defamation claim for the Party They were just mistakenly not named But the Louisiana courts are clear You don't have to be the party in a piece of litigation to bring a defamation claim arising out of it If defamatory statements are made about you in that Litigation and they certainly were since all of the allegations in the underlying litigation in Montana We're actually directed at carbon-6 even though McAllen had originally accidentally been named And I will that completes my argument unless your honors have any questions You save time for rebuttal sir. I did Miss Siegel Your honors may it please the court. My name is Kyle Wallace Siegel and I represent proof research incorporated in this matter I'm gonna take mr. Keegan's arguments as he presented them. The first is Whether carbon-6 was the real party in interest in this case and this of course matters because in the complaint and I'll remind the court That this was decided below on a motion to dismiss So we're taking the four corners of the complaint as it's presented and in the complaint carbon-6 argues that in support of its LEPA claims that a Lawsuit was filed against McGuire proof filed suit against McGowan and falsely accused McGowan of trademark infringement And now on appeal when the district court rightly said that you can't You can't file suit to protect a sister corporations interest for the first time carbon-6 is declaring It's the real party in interest and that just doesn't square with the history of this case your honor if The allegation that carbon-6 was the real party in interest. I think that's that's before the court for the first time on appeal below the carbon-6 Let set forth, you know a litany of bad acts that it said qualified for a LEPA claim Two of those were that the that proof falsely accused McGowan of trademark infringement and filed suit against McGowan In the Montana litigation to protect its trademark And the district court below said well that can't qualify as a LEPA claim because a sister corporation can't File suit to protect the interests of another sister corporation and now on appeal Carbon-6 is saying well, we were the party in interest all along which directly contradicts the history of this lawsuit when proof filed suit against McGowan in In Montana, it was McGowan that immediately turned and filed suit in before the trademark trial and appeal board It was McGowan that prosecuted that action for three years never brought carbon-6 into the proceedings and only now in order to get around the The prescriptive period are they alleging that carbon-6 is the real party in interest here? so I think given the history of the case given that McGowan was the party who Prosecuted these actions over the six-year lifetime of this of this trademark dispute It's simply incorrect to say that carbon-6 They shouldn't now be able to say that all along carbon-6 was the real party in interest Your honor mr. Keegan also addressed Whether a meritless lawsuit can be the basis for a LEPA claim I would remind the court that even to reach this issue the court first has to decide that carbon-6 was the real party in interest because this lawsuit was filed against McGowan and continuing tort doctrine applies, which I'll get to in a minute If the court is still with carbon-6 after these two after these two arguments, which are I think are substantial hurdles to what they're addressing Then we get to the issue of whether a LEPA whether a lawsuit can qualify as a LEPA claim and Your honor your honors. I think the answer is under Louisiana law extremely rarely and Certainly not under these circumstances the district court cited the general rule which is correct that the act of filing a lawsuit does not rise to the level of an unfair trade practice and certainly in this instance your honors Opposing counsel spent quite a bit of time talking about the meritless lawsuits that were filed I think the court can take judicial notice even on a motion to dismiss of what's in the record the TTAB the trademark trial and appeal board Issued a 65 page precedential opinion about the issues the trademark issues That were at issue in in this case in order to even get to its trial opinion Proof had to survive summary judgment, which it did The opinion these 65 pages is not the bad-faith Example, I wouldn't I certainly don't think so. Your honors. This was a This was an extremely long Dispute about whether proofs trademark was functional. It was a technical highly scientific issue That involved four or five years three or four years of litigation and we are on the dismissal stage So perhaps these you advance your other arguments first. Sure And your honors next I wanted to address the continuing tort doctrine judge Elrod, I think that Raising the hog opinions and the crump opinions is exactly right hog has been the seminal case in Louisiana since 2010 I think about the continuing tort doctrine and and what hog says is that The continuing tort doctrine is a conduct based one Asking whether a tort visa perpetuates an injury through overt persistent and ongoing acts the fact that a litigation is Outstanding is not an act. It is the you know under fog It would be described as the continuing ill effects of the fact that the lawsuit was filed the fact that the register that proof Continued attempting to enforce its trademark until the t-tabs decision in 2021 is not an act. It's the continuing ill effects of registering the trademark in the first place. I think the district court understood that the Opinions that the carbon six relies on appear here Fox and Capitol House chafed against What the hog court said in in 2020? Carbon six Alleges a litany of bad acts that it says should give rise to a lump of claim But that's exactly what they are your honors. They are acts. They are discreet acts that had discreet time periods within which Carbon six could file suit here and the very last bad act That they have described in this litigation occurred in November of 2020 when? proof filed its When proof filed its trial brief in the cancellation proceedings And I have yet to see carbon six articulate an act that occurred after that trial brief was filed That would give rise to suspending the let the prescription period even further hog controls here, I think the district court recognized that and and Because of that the very last time that carbon six could have filed suit here would have been in November of 2021 I also think it's important, you know beyond applying applying hog and crump here It's important for the court to understand that as far back as 2016 carbon six was Cognizant of the potential claims against it in response to the cease and desist letter that That proof sent to it in 2016 carbon six was already saying that proofs Information that it provided to the USPTO was riddled with half-truths and contradictions and misrepresentations it knew in 2016 that it was a that it believed that the trademark was registered fraudulently and yes there were acts subsequent to that which could have triggered the let the period but They repeatedly sat on their rights throughout this litigation To bring the allegations that they are now bringing in 2022 It was McGowan that decided to leave the Montana litigation and move this dispute over to the trademark trial and appeal board where it did it didn't bring carbon six in as an indispensable party and Before the t-tab they couldn't ask for these types of damages. So for now in in What they are doing now is the the natural consequences of this the decisions they have made throughout this litigation to to sit on their rights and and even after the The lawsuit ended in May of 2021 and was dismissed in August of 2021 They still waited for six more months before filing suit in in Louisiana So for all of those reasons, I think it's clear that it was just a couple of months till he could get back Or that's it was really six months. Well, and and what's interesting your honor is that in August of 2021? After losing before the the t-tab Proof went to the Montana court and voluntarily dismissed the litigation. They had had it. It was stayed while the t-tab was was addressing the functionality question Regarding the trademark and proof went back to the Montana District Court and Voluntarily dismissed the litigation. They said we lost before the t-tab. We're not going to prosecute this action any further and McGowan actually tried to stop the suit from being dismissed. They said we have counterclaims we want to file So in August of 2021 McGowan and I think by extension carbon-6 since they're controlled by the by the same individual Knew that they had rights and still waited another six months to bring this lawsuit but it's clear under Louisiana's rules of prescription that the one-year prescriptive period applies both to the LEPA claim and to the defamation claims and the very last act as as interpreted by the hog decision and the crump decisions occurred in November of 2020 when Proof filed its trial brief in the cancellation proceedings Carbon-6 that alleges that That there were defamatory statements within that brief Carbon-6 has not articulated an act that occurred after that brief was filed that would qualify for the suspension of the LEPA period of the prescriptive period into the one year Into the one-year period before they filed suit in February of 2022 not to belabor the point But can you please go back to what whether or not? the prescriptive period is suspended during the pendency of The lawsuit that they he said in the argument your post your friend on the other side that you must You must stop and you cannot go forward under Louisiana law if there's a pending lawsuit And it's not gone all the way to the end. Sure You know, I would like to address first of all the fact that you know We do believe this was a good faith filing and the fact that the t-tab opinion was 65 pages sort of You know, I think supports our point But no, I don't think the pendency of a litigation Suspends the prescription period until the end of the litigation The district court actually addressed this a very question that said it can't be the rule that prescription is suspended So long as the perpetrator of a fraud fails to correct his false statements or fails to you know continue to Try to enforce its trademark such an exception would swallow the rule You'd never have a prescriptive period except when a fraudster willingly declosed his fraudulent conduct the Miller versus Conagra case the Louisiana Supreme Court case actually Addresses this and says that it's axiomatic that a defendant is allowed to explain its reasons for terminating a contract What a contract was in dispute in that case without having its assertions be? construed as a continuous violation of Lutper to hold Otherwise would be to require defendant to choose between admitting liability on the one hand and extending prescription by pursuing his defense on The other we cite that in our appellee brief, and I think that's squarely on point with the question that you've asked I briefly want to address the defamation claim Louisiana law is clear that Defamation claims are only suspended till the end of a lawsuit if if you're a party to that lawsuit and Again, carbon six was not a party to the lawsuit from which the alleged defamatory statements came and so because of that again, the last defamatory statements were made alleged defamatory statements were made in November of 2020 and and carbon six was required to File suit by November of 2021 based on those alleged defamatory statements, and it did not Your honors, I would like to spend a few minutes discussing the issue of personal jurisdiction I'm happy to entertain any other questions on this issue, but we did raise jurisdiction as a as a separate reason to uphold dismissal of the suit here and Which you know, the Fifth Circuit is allowed to uphold a decision for any reasons that are Based on any of the arguments that are addressed below in in this particular case we had one One cease-and-desist letter that was used as the basis for establishing personal jurisdiction in Louisiana and To remind the court proof is a Delaware corporation with month and a Montana principal place of business McGowan's a Montana LLC and carbon six is a Louisiana LLC the one direct contact with Louisiana Was the cease-and-desist letter that proofs attorney sent to the headquarters of carbon six and in Baker, Louisiana back in 2016 Defense distributed the gun case Isn't there only one letter from the Attorney General in that case and that was plenty fine There is your honor and I know your honor was on that panel. So I I will try my best to distinguish it for you There are actually five decisions in the Fifth Circuit that address whether one cease-and-desist letter can be the subject alone of personal jurisdiction the Strum and realty cases the Bulkley case which judge Willett you were the author of and The Halliburton versus Ironshore case and those four decisions said that one cease-and-desist letter is not sufficient Your honor is correct that the defense distributed case Decided that one cease-and-desist letter was sufficient in those particular circumstances as your honor may remember in that case the New Jersey Attorney General was attempting to enforce a nationwide ban of the sale of products that this Excuse me. You said as we may remember and I just said we remember it. Well, I'm going sure And And the district court, I believe Applied gruel is sort of a bright-line rule that whenever a company is a Company is attempting to enforce something nationwide that personal jurisdiction attaches with respect I think because we are in the context of Trademark rights those by definition patent holders and trademark holders by definition have nationwide rights that they are entitled to enforce so In in that in the gruel case. I think the court was a little frustrated with the New Jersey Attorney General's attempt to Enforce this nationwide ban of the sale of firearms rather than saying I don't want my constituents in New Jersey to be able to buy Your products the New Jersey Attorney General is saying I don't want anybody to be able to buy your products But here the only rights that patent and trademark holders have to enforce our nationwide rights and I think the gruel court Recognized that there are some policy concerns when a cease-and-desist letter One cease-and-desist letter is enough to establish jurisdiction It's said in footnote 10 of its opinion If the price of sending a cease-and-desist letter is that the sender thereby subjects itself to jurisdiction in the forum of the alleged Rights infringer the rights holder will be strongly encouraged to file suit in its home forum without attempting first to resolve the dispute Informally by means of a letter. That's what proof was attempting to do here by sending its cease-and-desist letter Letter I think the policy concerns of an altar an alternative holding here are that in the context of patent and trademark Anytime someone tries to enforce its patent and trademark By sending a letter to the headquarters of the potential infringer It could subject itself to personal jurisdiction in the potential infringers home state You know proof could say I don't want to I don't want to I Don't want to risk being hailed into court in Louisiana. So I'm just going to file a deck action in Montana rather than rather than try to resolve this amicably conversely if If a letter is sent to Louisiana The potential rights infringer can say hey before this goes any farther I know if I file suit now I can litigate in my home forum I would urge the court to look at the Federal Circuit cases that we cited in our personal jurisdiction section of our briefing because I think those are helpful in understanding how this is how this issue is is Decided in the context of patent and trademark law in particular the Red Wing shoe opinion was was exactly what we're dealing with here in our case a Potential infringer in in Minnesota the infringer filed a deck action in Minnesota and the Minnesota District Court said That's not enough because and it didn't focus so much on the minimum contacts prong of specific jurisdiction as it did the fairness and the reasonableness standard which and it said Standards of fairness demand that the patent holder be insulated from personal jurisdiction in a distant foreign forum When it's only contact with that forum or efforts to give proper notice of its patent rights This case is the Red Wing shoe case proof was trying to do exactly what the patent holder in Red Wing shoe did and for Those reasons we think you can also affirm the decision of the of the District Court For lack of subject matter lack of personal jurisdiction. Thank you your honors I Address in personal jurisdiction first The actions were a little more extensive than described in Louisiana there was the initial cease and desist letter sent to proof I Mean I'm sorry sent to carbon-6 There was a second letter sent a few months later to carbon-6 as counsel Who is in South Carolina, but we cite the cases that say For jurisdictional purposes if you send a letter to the council, it's deemed to be sent to where the client is located again That was in Louisiana Proof also came down and deposed multiple witnesses who were employees of carbon-6 in Louisiana further actions in furtherance of their enforcement of these invalid trademark rights and finally All of their conduct was Intended to suppress sales and competition and in fact eliminate sales in Louisiana And that's a key factor in personal jurisdiction is whatever acts you did however infrequent They may have been what sorts were they intended to be caught causing damage In the state and these clearly were because carbon-6 Who is the obvious target of the litigation despite naming the wrong party is located in? Louisiana council argued that We've not raised The idea that carbon-6 was the real target of the lawsuit Our entire complaint raises essentially that issue that that is and of course it was raised to them in the underlying litigation which caused them to realize they had named the wrong party and state that they were going to bring in carbon-6 as the proper defendant, so that's what all of this has been about for several years since prior to my involvement the notion that we've Never argued carbon-6 was the real victim and the real target in that litigation is um I think delighted by the record and certainly we cover that thoroughly in our briefing We're not seeking damages from McGowan in this case McGowan was damaged because for every lost sale that carbon-6 has McGowan has a lot lost sale because Carbon-6 exclusively buys its barrel blanks from McGowan before it carbon wraps them but our claim in this case is not to recover for any of those lost sales of McGowan only the lost sales of Carbon-6 and the attorneys fees that it incurred in defending the meritless litigation the notion that we set on our rights during the underlying litigation, so First of all on The defamation claim it wasn't right until the underlying claim containing the defamatory statements is litigated. We've discussed that already But also shortly after the Montana litigation was filed in December of 2017 the parties by agreement Agreed to stay it and have the validity of the trademark litigated in the cancellation proceeding McGowan Rightfully wrongfully was the named party in Montana, so it was the party in the cancellation proceeding when the two parties went over and fought it out over there The validity of the patent the case was stayed there were no rights sat on proof couldn't have intervened into a state case The cancellation proceeding went on for years until it was concluded in 2020 when that a Cancellation proceeding was decided and the case went back to Montana District Court proof filed a Motion for voluntarily voluntary dismissal of its claims having lost the trademark validity issue Immediately Carbon-6 and McGowan's counsel at the time Started preparing an opposition to that because it wanted to assert counterclaims and assert them at the first Opportunity that it could when the case got unstayed When it came back from the cancellation proceeding that Opposition the court quickly granted the involuntary dismissal without hearing from the other party the opposition was filed But it was filed about two hours after the court signed the order dismissing the claims upon proofs motion so there never was an opportunity to assert these claims and yes, six months passed before they were brought because Carbon-6 had to find Louisiana Council Louisiana Council had to investigate the claims and that the that took It was quite the record in the cancellation proceeding in terms of depositions and documents So we had a year from that point in time There's no rule that says we have to file in four months instead of six months one more thing on the prescription on the Lutper claim because If I suggested it I didn't mean to that the Lutper claim has the same rule that the litigation has to end before the claim is right That's just the defamation claim. It's only for the defamation. Okay. All right So on the Lutper claim, of course, we're relying on the continuing tort doctrine But one thing that I wanted to respond to about this this this debate Over whether their conduct continued as long as they were pressing the invalid trademark rights up to May 23 Or whether it was time is expired. So you need to wrap it up Okay, or whether it was just the mere filing of a of a brief that was the last act even though the litigation continued I want to point the court to the cases that we rely on that say if you're violating a statute and they certainly are here by never going back to the trademark office and correcting their Misrepresentations that allow the trademark to issue in the first place to have a continuing duty to do as long as they're violating that statute Prescription is continues to be suspended. Thank you. We have your argument. Thank you This case is submitted. We appreciate the arguments